IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| JENNIFER SHAYNE CARDENAS,<br>      Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br>      Defendant. | Case No. 4:14-cv-04090-JEH |

**Order and Opinion**

Now before the Court is the Plaintiff's Jennifer S. Cardenas's Motion for Summary Judgment (Doc. 10) and the Commissioner's Motion for Summary Affirmance (Doc. 14). For the reasons stated herein, the Court GRANTS the Plaintiff's Motion for Summary Judgment, DENIES the Defendant's Motion for Summary Affirmance, and REMANDS the matter for additional proceedings consistent with this Order and Opinion.[1]

**I**

On October 17, 2011, Cardenas filed applications for disability insurance benefits and supplemental security income benefits[2] alleging disability beginning on April 19, 2009. Her claims were denied initially on January 27, 2012, and were denied upon reconsideration on June 15, 2012. On August 13, 2012, Cardenas filed a request for hearing concerning her applications for disability benefits. A hearing was held before the Honorable Shreese M. Wilson (ALJ) on October 31,

---

[1] References to the pages within the Administrative Record will be identified by AR [page number]. The Administrative Record appears as (Doc. 5) on the docket.

[2] Because the regulations governing the determination of disability for DIB, 20 C.F.R. § 404.1501 *et seq.*, are substantially identical to the SSI regulations, 20 C.F.R. § 416.901 *et seq.*, the Court may at times only cite to the DIB regulations.

1

2013, and at that time Cardenas was represented by an attorney. Following the hearing, Cardenas's claims were denied on December 6, 2013. Her request for review by the Appeals Council was denied on August 11, 2014, making the ALJ's Decision the final decision of the Commissioner. Cardenas filed the instant civil action seeking review of the ALJ's Decision on October 7, 2014.

II

At the time she applied for benefits, Cardenas was 40 years old living in Hampton, Illinois in a home with her boyfriend. She was a high school graduate who had previously worked as a cashier, stocker, shoe salesperson, day care worker, and as a sandwich maker for two days at a Blimpie sandwich shop. On her Form SSA-3368, Cardenas provided that ADD, bi-polar, "thiatric [sic] nerve problems," PTSD, obsessive compulsive, and sleep apnea all limited her ability to work.

At the hearing, Cardenas testified that she had an eight year old daughter who was then with a temporary guardian because Cardenas had been drinking when she previously had her daughter. Cardenas testified that she was attempting to obtain back custody of her daughter. She testified that she saw her daughter every other weekend when the daughter came for visits and that Cardenas would watch a friend's daughter so the two girls could play together. She testified that she had a driver's license and drove whenever necessary, but she needed to follow another person so that she would not become lost on the way to her destination. Cardenas testified that she smoked cigarettes and that when she got really nervous, they helped her to calm down. She explained that she took a special education class in math in high school. She also testified that she could deal with money, count it, and make change as long as she had a cash register and was told the correct amounts. She enjoyed drawing and writing poetry. Cardenas testified that she tried to read the Bible daily and that she could

retain the information she read if it interested her and if she re-read it. She testified that she had help filling out the Social Security forms.

Cardenas explained that her boyfriend had his own business doing lawn care and house cleaning, and he also had a seasonal job. She testified that she attempted to help her boyfriend with mowing but that she was not very good at it, and she also served as a gopher for him while he worked. Regarding her other work, Cardenas explained that her job at Blimpie was short-lived because she was not trained properly, so another worker got upset with her and told Cardenas she was no longer needed. Cardenas said that she attempted to look for other work in decorating and in an ice cream shop setting. She also sought work as a cashier. She explained that with her previous work, if she was given specific things to do, she then would have to do them right away or she would otherwise forget them.

Cardenas testified that she had been sober for a little over a year and, as a result, her condition improved, she lost her "beer weight," and she focused better. She explained that she was able to do things she did on a regular basis without issue but that she had issues with new tasks. She also explained that in order to get her daughter back, Cardenas had to complete parenting classes and remain sober. She testified that she saw one of her primary doctors once every two or three months and that her counselor came out to her home to see her a couple of times a month. She took her medications but did not take all of them because she could not afford them. Cardenas explained that she continued to smoke and thought she should discontinue cigarettes but that it was hard for her to quit. She acknowledged that her medications would help her more than cigarettes would help her.

Upon questioning by her attorney, Cardenas testified that she fluctuated between different moods, which she did not even notice until her boyfriend

would point out to her that she was acting moody and being rude to people. She testified that she felt depressed because she basically raised herself and felt alone in the world when she was young. She also testified that she experienced anxiety which made her feel edgy, nervous, and jittery, and her anxiety was caused by thinking about her past and how nobody cared about her. She also said that she became angry and irritable a lot of the time and usually that was due to missing her daughter. Regarding what she did around her home, Cardenas testified that she did repetitive things that did not require her to think about them such as doing the dishes, taking out the trash, and doing the laundry. She needed to be reminded to do things that were new to her, and she would have to write things down so she would not forget.

Cardenas elaborated upon the extent to which she helped her boyfriend with his jobs. She testified that she helped her boyfriend with different light jobs for about three or four hours at a time. She said that he did have to remind her what to do at times and that he had to help her with tasks that he gave her. She testified that she was obsessive in worrying about her daughter, in checking to make sure the stove was off, and in checking to make sure the doors were locked. Cardenas testified that she left the house during the week on average two to three times and would take the bus to get where she needed.

The ALJ proceeded to question the Vocational Expert (VE) George Paprocki and elicited a number of answers from him regarding the jobs that would be available to a hypothetical individual with a variety of limitations.

### III

In her Decision, the ALJ found that Cardenas had the severe impairments of major depressive disorder, anxiety, attention deficit hyperactivity disorder (ADHD), and borderline intellectual functioning. When considering what impairments were severe, the ALJ noted that Cardenas had a history of alcohol

abuse throughout the period under consideration. The ALJ also acknowledged Cardenas's allegations of some difficulties using her arms and hands, but the ALJ explained that there was no diagnostic evidence or other objective findings to suggest Cardenas had a medically determinable physical impairment that caused such alleged physical symptoms. The ALJ further explained that a January 2012 medical consultative examination revealed no musculoskeletal abnormalities or physical limitations. The ALJ made the following Residual Functional Capacity (RFC) finding:

> [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: moderate limitations in concentration, persistence or pace when attempting complex or detailed tasks, so she is limited to job [sic] that do not require complex or detailed job processes, little in the way of change in job process from day to day, tasks that should consist of multiple self-evident tasks that can be easily resume [sic] after momentary distraction; and the ability to read, perform math or make change with money should not be integral to the successful completion of job tasks.

AR 23. In making her RFC finding, the ALJ discussed Cardenas's November 2011 Function Report and her testimony concerning depression and anxiety, past neglect and abuse, difficulty concentrating, previous special education class in math in high school, the frequency with which she saw her minor daughter, the frequency of how often she drove a car and used public transportation, and the fact that she had completed parenting classes she took as part of her effort to regain custody of her daughter.

The ALJ also discussed Cardenas's prescribed medications, her grandmother's November 2011 third-party Function report, and her work history. The ALJ concluded, based upon Cardenas's work history, that Cardenas had not worked for reasons unrelated to her impairments. The ALJ detailed

Cardenas's daily activities and determined that those activities were not limited to the extent one would expect given Cardenas's complaints of disabling symptoms and limitations. In support of that finding, the ALJ cited Cardenas's own Function Report and testimony, her grandmother's Function Report, and January 2012 treatment notes.

In regard to her mental health impairments of major depressive disorder, anxiety, and ADHD, the ALJ made the following finding:

> [T]he longitudinal evidence of record indicates that, after an initial exacerbation of symptoms due to an extreme situational stressor (her husband's suicide in April 2009), the severity and frequency of the claimant's symptoms were generally exacerbated by alcohol abuse, and controlled by medication compliance and discontinuance of alcohol abuse.

AR 25. The ALJ noted the instances in the record where Cardenas's alcohol consumption was detailed, and the ALJ noted the effects of that consumption on her symptoms of impairment. The ALJ went into extensive detail about Cardenas's GAF scores and how Cardenas's low GAF scores coincided with her alcohol use. In the context of GAF scores, the ALJ also stated that the cited treatment notes "strongly suggest [Cardenas's] ongoing symptoms have occurred because she had not complied with her prescribed medication regimen, albeit for financial reasons." AR 27. In addition to the evidence cited regarding Cardenas's alcohol consumption, the ALJ specifically cited to a January 2012 consultative examination, January 2013 treatment notes by Dr. Mukesh Kumar, M.D., various treatment notes by primary care physician Dr. John Ciaccio, M.D., and a July 2013 Psychiatric/Psychological Impairment Questionnaire completed by Dr. Ciaccio in her discussion of Cardenas's mental health impairments and borderline intellectual functioning.

Central to the ALJ's Decision were medical opinions provided by the psychologists employed by the State Disability Determination Services and Cardenas's treating physician Dr. Ciaccio. Dr. Hudspeth's opinion was dated January 6, 2012. AR 610-22. His "Medical Disposition" was that an RFC assessment was necessary, and he based that disposition on affective disorders, anxiety-related disorders, personality disorders, and substance addiction disorders. He also opined that "MDD," "GAD," and "DX of narcissitic PD," were medically determinable impairments that were present but that did not precisely satisfy the diagnostic criteria. He checked the box for "Behavioral changes or physical changes associated with the regular use of substances that affect the central nervous system." AR 618. He rated Cardenas's functional limitations as mild and moderate with no episodes of decompensation of extended duration. In his Consultant's Notes, Dr. Hudspeth identified treatment notes dated April 2008 through October 2011 and therapist notes dated December 2011 that he considered. Dr. Hudspeth lastly stated, "No medical source statement." AR 622.

Dr. Hudspeth also completed a Mental Residual Functional Capacity Assessment dated January 6, 2012. He checked "Not Significantly Limited" or "Moderately Limited" for the various categories. AR 624-25. In the narrative section of the Assessment form, Dr. Hudspeth elaborated:

> This claimant has MER indicating sufficient cognitive, memory and thought processing skills to retain the ability to understand, remember and carrying [sic] out at least simple one/two step repetitive tasks. There is no MER documenting any significant social or behavioral impediment to the work environment. There is no MER indicating any significant problems learning route to a work site. There is no significant data indicating any issues with this claimant's ability to adapt to work environment.

AR 626.

Dr. Taylor's opinion was dated June 2, 2012. He completed a Psychiatric Review Technique form on which he checked "Insufficient Evidence" as the "Medical Disposition. AR 662. He also checked "These findings complete the medical portion of the disability determination" without checking any categories upon which the medical disposition was based. AR 662. The remainder of the form was left blank. In the narrative section of the form, Dr. Taylor stated in relevant part:

> No MSS, no weight given.
> Credibility cannot be determined due to insufficient evidence prior to DLI.
> There is insufficient evidence prior to DLI to document an impairment of disabling severity.

AR 674.

A discrete part of the ALJ's Decision was dedicated to Dr. Ciaccio's multiple medical source statements. The ALJ detailed Dr. Ciaccio's answers in his July 2013 Psychiatric/Psychological Impairment Questionnaire including that the combined effects of Cardenas's mental impairments "markedly limited" her ability to perform a number of mental function limitations. He checked "mildly limited" and "Moderately limited" in other instances. Dr. Ciaccio also opined that Cardenas was incapable of even a "low stress" job and assigned her a GAF score of 50 which Dr. Ciaccio identified as her lowest GAF score of the past year. He gave her prognosis as "poor." 765. Dr. Ciaccio opined that Cardenas's impairments were likely to produce "good days" and "bad days," and Cardenas was likely to be absent from work more than three times a month as a result of her impairments or treatment. AR 770-71.

As for the weight she gave all of these medical opinions, the ALJ first stated that the RFC conclusions reached by the physicians employed by the State Disability Determination Services supported a finding of "not disabled" and they

deserved "some weight" where there existed a number of "other reasons" to reach similar conclusions. AR 27. She then gave "little weight" to Dr. Ciaccio's opinions. The ALJ explained:

> Although the medical opinion of a treating physician is entitled to controlling weight so long as it is well-supported by medically acceptable clinical and laboratory techniques and not inconsistent with the other substantial evidence of record, that is not the case with the opinions of Dr. Ciaccio for multiple reasons.

AR 28. The ALJ went on to articulate three particular reasons for assigning "little weight" to Dr. Ciaccio's medical opinion: 1) Dr. Ciaccio apparently relied quite heavily on the subjective reports of symptoms and limitations provided by Cardenas, and seemed to uncritically accept as true most, if not all, of what Cardenas reported; 2) Dr. Ciaccio's opinion was without substantial support from the other record evidence, including his own progress notes; and 3) the possibility that a doctor may express an opinion in an effort to assist a patient with whom he or she sympathizes for one reason or another. AR 28-29. Ultimately, the ALJ determined that the record evidence did not support Cardenas's allegations of totally incapacitating symptoms.

## IV

Cardenas argues that the ALJ committed the following errors: 1) the ALJ failed to properly weigh the medical evidence; and 2) the ALJ failed to properly evaluate Cardenas's credibility.

The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989). Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Although great deference is afforded to the determination made by the ALJ, the

9

Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). The Court's function is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971), *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

In order to qualify for disability insurance benefits, an individual must show that his inability to work is medical in nature and that he is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of the employer are irrelevant in determining whether a plaintiff is eligible for disability. See 20 C.F.R. §§ 404.1566, 416.966 (1986). The establishment of disability under the Act is a two-step process.

First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382(c)(a)(3)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980). The factual determination is made by using a five-step test. *See* 20 C.F.R. §§ 404.1520, 416.920. In the following order, the ALJ must evaluate whether the claimant:

1) currently performs or, during the relevant time period, did perform any substantial gainful activity;

2) suffers from an impairment that is severe or whether a combination of her impairments is severe;

> 3) suffers from an impairment which meets or equals any impairment listed in the appendix and which meets the duration requirement;
>
> 4) is unable to perform her past relevant work which includes an assessment of the claimant's residual functional capacity; and
>
> 5) is unable to perform any other work existing in significant numbers in the national economy.

*Id*. An affirmative answer at any step leads either to the next step of the test, or at steps 3 and 5, to a finding that the plaintiff is disabled. A negative answer at any point, other than at step 3, stops the inquiry and leads to a determination that the plaintiff is not disabled. *Garfield v. Schweiker*, 732 F.2d 605 (7th Cir. 1984).

The plaintiff has the burdens of production and persuasion on steps 1 through 4. However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other type of substantial gainful employment. *Tom v. Heckler*, 779 F.2d 1250 (7th Cir. 1985); *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984).

In the instant case, Cardenas claims error on the ALJ's part at Step Four.

### A

Cardenas argues that the ALJ erred by giving "some weight" to the opinions from non-examining state agency medical consultants instead of giving any probative weight to the treating specialist, Dr. Ciaccio. She argues that the ALJ's reasons for rejecting Dr. Ciaccio's opinions were insufficient, the ALJ failed to identify substantial evidence contradicting Dr. Ciaccio's opinions, the ALJ erred by finding Dr. Ciaccio's opinions inconsistent with her activities of daily living, the ALJ inappropriately speculated that Dr. Ciaccio rendered his opinion out of sympathy for her, and the opinions provided by the non-examining psychologists failed to rise to the level of substantial evidence. The

11

Commissioner counters that the ALJ thoroughly considered Dr. Ciaccio's opinions and reasonably concluded that they were entitled to only little weight. The Commissioner argues that the ALJ discussed the discrepancies between Dr. Ciaccio's opinions and the medical record as a whole, including Dr. Ciaccio's own treatment notes. The Commissioner also argues that Cardenas mischaracterizes the ALJ's Decision regarding Dr. Ciaccio's potential bias, and that the ALJ reasonably explained her finding in that regard. Additionally, the Commissioner argues that the ALJ was required to consider the opinions provided by the non-examining psychologists.

Cardenas argues that the opinions provided by the non-examining psychologists (Dr. Hudspeth and Dr. Taylor) failed to rise to the level of substantial evidence where the first non-examining psychologist reviewed records only through December 2011 without the benefit of any medical opinion regarding Cardenas's level of functioning, and the second non-examining psychologist reviewed the file stating there was insufficient evidence to give an opinion on Cardenas's level of mental functioning. In response, the Commissioner argues that the ALJ appropriately gave some weight to the opinions of Drs. Hudspeth and Taylor because they were consistent with the rest of the record and there is nothing to suggest that the ALJ relied upon those opinions to discount Dr. Ciaccio's opinions.

The ALJ erred by assigning "some weight" to the non-examining psychologists' opinions. The ALJ gave "some" weight to opinions that were simply insufficient. Dr. Hudspeth's opinion was shaped without medical records from essentially half of the period the ALJ was required to consider. SSR 96-6p plainly states that "the opinion of a State agency medical or psychological consultant may be entitled to greater weight than a treating source's medical opinion *if* the State agency medical or psychological consultant's opinion is based

on a review of a *complete case record* that includes a medical report from a specialist in the individual's particular impairment which provides more detailed and comprehensive information than what was available to the individual's treating source." (emphasis added). Here, the ALJ's error in affording some weight to Dr. Hudspeth's opinion was egregious where: 1) Dr. Hudspeth was a *non*-examining medical source; and 2) he did not have the complete case record to review. *See* 20 C.F.R. § 404.1527(c)(1) ("Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you"); *see also Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004) (finding that the ALJ's decision was supported by substantial evidence where the ALJ did not improperly reject an examining physician's opinion in favor of a non-examining physician's decision). Moreover, Dr. Hudspeth's opinion was not shaped with any medical source statements (i.e. an opinion from treating physician Dr. Ciaccio), let alone shaped with a medical report from a specialist. Dr. Taylor also had no medical source statements in front of him at the time he completed the Psychiatric Review Technique form. AR 662-74.

      The ALJ's error in improperly weighing the non-examining psychologists' opinions is exacerbated by the fact that she *correctly* weighed treating doctor Dr. Ciaccio's opinion when she gave it "little weight" because, in doing so, the ALJ was left with insubstantial evidence to support her RFC finding.  While an ALJ must give controlling weight to the medical opinion of a treating physician, the ALJ must do so only if the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence." *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008), *citing Hofslien v. Barnhart*, 439 F.3d 375, 376 (7th Cir. 2006); 20 C.F.R. § 404.1527(c)(2); 20 C.F.R. §416.927(c)(3). If the ALJ does not give a treating

physician's opinion controlling weight, the Social Security regulations require the ALJ to consider: 1) the length, nature, and extent of the treatment relationship; 2) the frequency of examination; 3) the physician's specialty; 4) the types of tests performed; 5) and the consistency and supportability of the physician's opinion. 20 C.F.R. § 404.1527; 20 C.F.R. § 416.927; *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009).

Here, the ALJ clearly articulated her reasons for not giving Dr. Ciaccio's opinions controlling weight by specifying three key issues with his opinions and by elaborating upon those issues with citation to the record evidence. The ALJ discussed at length in rejecting Dr. Ciaccio's opinions and elsewhere in the Decision how the longitudinal evidence of record did not support the extent of limitations as opined by Dr. Ciaccio. The ALJ specifically explained that Dr. Ciaccio's opinion about how Cardenas's PTSD interfered with her ability to hold jobs in the past contrasted with her own statements about why her last two jobs ended; her own statements did not implicate PTSD as a reason. The ALJ noted the extent to which Cardenas continued to engage in activities of daily living as another reason for finding that Dr. Ciaccio's opinions were without substantial support from other record evidence.

To the extent that Cardenas takes issue with the ALJ's discussion of her GAF scores, the ALJ committed no error. The ALJ discussed the fluctuations in Cardenas's GAF scores elsewhere in the Decision to illustrate the effect of alcohol and medication non-compliance on Cardenas's adaptive functioning. The ALJ addressed two different GAF scores when discussing Dr. Ciaccio's opinions as another example of how his opinions differed from other substantial evidence of record. As the Commissioner argues, the ALJ did not rely solely upon Cardenas's GAF scores in assessing her RFC. The ALJ also did not commit error by equating Cardenas's ability to perform certain daily activities with the ability to sustain

full-time work in light of her mental impairments. Instead, the ALJ considered Cardenas's daily activities for purposes of determining just how disabling her alleged symptoms and limitations were and how much weight should be given to Dr. Ciaccio's opinions regarding Cardenas's abilities and limitations. In other words, the ALJ did not formulate an RFC based only, or even mostly, upon Cardenas's activities of daily living.

Further, the ALJ provided a detailed explanation for giving Dr. Ciaccio's opinion less weight, in part, because of the possibility that Dr. Ciaccio as Cardenas's treating doctor may have expressed an opinion in an effort to assist Cardenas with whom he sympathized. The ALJ did not just speculate that Dr. Ciaccio may have rendered his opinions out of sympathy. The ALJ cited Dr. Ciaccio's treatment notes in which he stated: that both Cardenas and her boyfriend were self-employed and made very little money each month; that Cardenas experienced anxiety with regard to regaining custody of her daughter; that Cardenas had many social and financial stressors affecting her ability obtain her prescriptions; that Cardenas had a lot of stress financially and due to going to court for disability and to get her daughter back and due to car trouble and worries over her boyfriend losing his job; and that he and Cardenas discussed him writing a letter to her township stating that she was unable to work due to her mental illness. AR 29. The ALJ expressly stated, "While it is difficult to confirm the presence of such [sympathetic] motives, they are more likely in situations where the opinion in question departs substantially from the rest of the evidence of record, as in the current case." AR 29. The Court is "not required to ignore incentives in resolving issues of credibility" where, for example, there is evidence of record to indicate that the personal physician "might have been leaning over backwards to support the application for disability benefits." *Whitney v. Schweiker*, 695 F.2d 784, 789 (7th Cir. 1982), *quoting Cummins v.*

*Schweiker*, 670 F.2d 81 (7th Cir. 1982). Here, as the Commissioner argues, the ALJ pointed to evidence of record to support her conclusion that Dr. Ciaccio's opinions may have been skewed by his sympathy for Cardenas which in turn led the ALJ to discount his opinions.

Next, while the Commissioner would be on firmer ground with regard to the weight the ALJ gave Dr. Ciaccio if the ALJ expressly discussed all of the factors set forth in 20 C.F.R. § 404.1527 and 20 C.F.R. § 416.927, SSR 96-2p does not state that the ALJ must in fact expressly *discuss* all of the listed factors; SSR 96-2p provides that a treating source medical opinion must be *weighed* using all of the factors. The Seventh Circuit has repeatedly stated that an ALJ "must minimally articulate his reasons for crediting or rejecting evidence of disability." *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000), *citing Scivally v. Sullivan*, 966 F.2d 1070, 1076 (7th Cir. 1992). The ALJ minimally articulated her reasons for giving Dr. Ciaccio's opinions little weight. Moreover, in light of the clearly articulated reasons the ALJ set forth for giving Dr. Ciaccio's opinion little weight, the ALJ's error in expressly discussing all of the listed factors was harmless. The Court is mindful that "administrative error may be harmless," *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011), and that the Court ought not remand a case to the ALJ where it is convinced that the ALJ will reach the same result. *Id*. Here, the Court is convinced that the ALJ would reach the same result regarding Dr. Ciaccio's opinions in light of the reasons the ALJ set forth for weighing that doctor's opinions as she did. The ALJ made clear the basis on which she determined that Dr. Ciaccio's opinions were inconsistent with other substantial evidence.

Cardenas partly supports her argument with citations to Seventh Circuit case law which provide that opinions provided by examining physicians cannot be rejected for the mere reason that they contradict the opinion of a non-

16

examining physician. *See Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004), citing *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003) ("An administrative law judge can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice"). Here, the ALJ did not reject Dr. Ciaccio's opinions solely because they contradicted with Dr. Hudspeth's or Dr. Taylor's. The ALJ, as discussed below, rejected Dr. Ciaccio's opinion for discrete reasons that did not include the fact that his opinions contradicted Drs. Hudspeth's and Taylor's opinions.

Nevertheless, the ALJ committed error by giving "some weight" to Dr. Hudspeth's and Dr. Taylor's opinions and "little weight" to Dr. Ciaccio's opinions where the ALJ was essentially left with no medical opinions regarding the limitations caused by Cardenas's impairments. In other words, she formulated an RFC unsupported by substantial evidence. This matter must therefore be remanded for the ALJ to more fully develop the record as it pertains to the available medical opinions and conclusions.

B

The final argument Cardenas makes pertains to the ALJ's evaluation of her credibility. Cardenas argues that the ALJ's credibility findings largely mirror the insufficient reasons she gave for rejecting Dr. Ciaccio's opinions, that Cardenas's activities of daily living do not establish her capacity to withstand the mental demands of full-time competitive work, and the ALJ was not permitted to create a backdoor method of denying Cardenas's claim based upon substance use without analyzing the effects of any substance use under the materiality standards required by the regulations. Hence, the Commissioner counters that just as Cardenas's arguments in connection with Dr. Ciaccio's opinions were unpersuasive, they remain unpersuasive in connection with the ALJ's credibility

determination. The Commissioner further argues that the ALJ thoroughly explained her reasons for finding that Cardenas's allegations were not entirely credible.

20 C.F.R. § 404.1535 clearly provides that "*[i]f we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability.*" (emphasis added). The procedures outlined in 20 C.F.R. § 404.1535(b) provide direction on how, *after a finding of disability is made*, the ALJ should determine whether alcohol or drug addiction are a "contributing factor" to the disability, thereby precluding benefits notwithstanding the initial finding of disability if such use is a contributing factor. Clearly, it is unnecessary for an ALJ to go through the procedures of § 404.1535 when the ALJ does *not* first determine that the claimant is disabled after considering the claimant's impairments and substance abuse in combination. On its face, the ALJ's Decision here presented no occasion for the ALJ to perform the materiality analysis where the ALJ did not expressly find that Cardenas was disabled after considering her impairments and alcohol use in combination. However, one sentence in the Decision raises the possibility that the ALJ may have believed that Cardenas was disabled when using alcohol but not disabled after application of the materiality analysis in the Regulations.[3] When addressing Cardenas's severe mental health impairments, the ALJ did discuss at some length Cardenas's alcohol use. The ALJ found:

> [T]he totality of the evidence of record shows the claimant's anxiety and depression were not disabling throughout the period under consideration; rather, her symptoms were relatively well-controlled when compliant with her medication (and not abusing alcohol),

---

[3] The Court notes that while just one sentence undoubtedly raises this possibility, the ALJ's Decision is actually replete with discussion of Cardenas's alcohol use.

despite occasional exacerbations related to significant social stressors.

AR 26.

On remand, the ALJ should clarify this statement and if, in fact, concludes that Cardenas is disabled when using alcohol but is not disabled under the relevant Regulations, the ALJ must then engage in the materiality analysis and determine whether, notwithstanding Cardenas's alcohol use, she would or would not be disabled.

## V

For the reasons set forth above, Cardenas's Motion for Summary Judgment (Doc. 10) is GRANTED, the Commissioner's Motion for Summary Affirmance (Doc. 14) is DENIED, and the matter is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for the ALJ to: 1) develop the record as it pertains to the available medical opinions and conclusions; and 2) clarify her statements regarding Cardenas's alcohol use and, if necessary, engage in the materiality analysis provided in 20 C.F.R. § 404.1535.

*It is so ordered.*

Entered on November 20, 2015.

s/Jonathan E. Hawley
U.S. MAGISTRATE JUDGE